FILED
2025 May-29  PM 05:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT A



# GENERAL AGENT AGREEMENT

THIS AGREEMENT, dated as of <u>03/02/2023</u>, (this "**Agreement**"), is by and between United Benefits, LLC, an Alabama limited liability company, having offices located at 3295 County Road 47, Florence, Alabama 35630 (the "**Company**"), and <u>Anthony Caputo</u>, (hereinafter the "**Agent**").

## RECITALS

**WHEREAS,** the Company is engaged in the business of writing and placing of all lines and classes of insurance with certain insurance companies and as a third-party administrator of such insurance;

**WHEREAS**, the Company, as a third-party administrator and pursuant to a service agreement, administers and handles the marketing of insurance plans of certain affiliated and unaffiliated insurers (the "**Insurer(s)**"), as more fully set forth in Attachment A annexed hereto and made a part hereof.

**WHEREAS**, the parties desire to establish a business relationship whereby the Agent shall, on behalf of the Company, solicit and sell insurance offered by the Insurer(s).

**NOW, THEREFORE,** in consideration of the terms and conditions set forth below, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is agreed as follows:

## SECTION 1: RELATIONSHIP OF PARTIES

**1.1**   **Relationship.** The parties agree that nothing in this Agreement shall be construed to establish an employee-employer relationship between the Company and the Agent, nor shall it be construed to constitute an affiliation, partnership or joint venture. The Agent shall be considered a contractor of the Company, and the Agent understands that the Company will not pay or withhold from the compensation paid to the Agent pursuant to this Agreement any sums customarily paid or withheld for, or on behalf of, employees for income tax, unemployment insurance, social security, workers' compensation or any other withholding tax, insurance, or payment pursuant to any law or governmental requirement, and all such payments as may be required by law are the responsibilities of the Agent. The Agent agrees that it will not and does not have any authority to (a) enter into any agreements, arrangements or undertakings on behalf of or which will be binding on the Company or Insurer(s), whether or not for the benefit of the Company or Insurer(s), or (b) make any representation that it has, or otherwise holds out as having, any authority to act for or bind the Company or Insurer(s), or represent that it is engaged by the Company in any capacity other than as an agent during the Term (as such term is defined in Section 7.1 of this Agreement), except if otherwise authorized in advance by an executive officer of the Company in writing. Agent may enter into separate agreements with employees, consultants, or independent contractors in order to carry out its duties hereunder, however, Agent shall have no authority with respect to such Insurer(s) insurance plans other than that which is expressly granted by this Agreement

1

DocuSign Envelope ID: 40EAE3E5-ADC9-4B95-A464-0986E716C055



and any subsequent written agreements between the Company and the Agent. Each party agrees to pay its own costs and expenses associated with this Agreement and the relationship contemplated hereby, and to be responsible to the other for errors and omissions.

## SECTION 2: AGENT RESPONSIBILITIES

**2.1    Solicitation.** Pursuant to the terms and conditions of this Agreement, the Agent will, at Agent's own expense:

    i.    Diligently solicit and sell insurance policies offered through the Insurer(s) individual or group insurance plans at the rates established by the Company or the Insurer(s) and/or set forth in any addenda hereto, as amended from time to time.

    ii.    Comply with all applicable federal, state and local laws applicable to its duties as contemplated hereby, as well as the Company's and Insurer(s) rules and regulations as to application, completion and submission, as amended from time to time.

    iii.    Represent to members and potential members the nature and scope of membership benefits only by means of the written material furnished to the Agent by the Company on behalf of such Insurer(s) from time to time and the Agent shall not, under any circumstances, represent membership benefits other than as set forth in such materials.

    iv.    Not alter or waive, orally or in writing, any of the insurance terms or conditions set by the Company and/or the Insurer(s).

    v.    Take no action and make no representation prejudicing the Company's right to determine an applicant's acceptability or subsequent benefits underwritten through the Insurer(s).

    vi.    Comply with the professional ethical standards governing the solicitation, sales and servicing of the insurance plans administered by the Company.

**2.2    Communication.** The Agent shall transmit to the Company only those applications made by, or on behalf of, insurance applicants which the Agent reasonably believes are true. Agent shall promptly transmit to each individual, or group, for which the Agent is responsible for all communications and documents sent to the Agent by the Company for such individual or group.

**2.3    Funds.** Agent shall not receive any funds due to Company, except that Agent may collect the initial month's premium from an applicant by check made payable to the carrier and/or financial institution.  Agent shall hold any and all such payments in a fiduciary capacity and shall hold and transmit such funds to the carrier and/or financial institution.

**2.4    Records.** The Agent shall maintain complete records of all transactions as to applications the Agent receives or transmits, together with any and all other records



required by federal, state and/or local governmental agencies. The Company shall have the right to inspect and review these records at any time and the Agent shall maintain these records as long as this Agreement remains in force, subject to Section 8.5 hereof.

2.5     **Reports.** The Agent shall be solely responsible to prepare and submit all reports and returns required of Agent by any governmental statute or regulation now or hereafter in force, and keep copies thereof accessible to the Company pursuant to Section 2.4 above. The Agent shall timely pay all applicable taxes, contributions, and other sums levied or assessed on Agent because of activities hereunder or because of commissions paid by the Company. All records and reports are the property of the Company, and shall be deemed "Materials" (as such term is defined in Section 8.5 hereof) and shall be subject to all terms and provisions of Section 8.5 hereof.

2.6     **Hold Harmless.** The Agent shall fully indemnify and hold harmless the Company and Insurer(s) and the Company's and Insurer(s) representatives, officers, directors, shareholders, subsidiaries, and any related persons (collectively, the **"Indemnified Persons"**), and will reimburse the Indemnified Persons for any loss, liability, claim, damage, expense (including costs of investigation and defense and reasonable attorneys' fees and expenses) or diminution of value, including the advancement of expenses, whether or not involving a third-party claim arising from or in connection with: (a) any breach of any representation, warranty, covenant, or obligation of the Agent in this Agreement or in any other certificate, document, writing, or instrument delivered by the Agent pursuant to this Agreement and/or (b) any operations of the Agent including, but not limited to, any third-party claims brought against the Agent.

2.7     **Material.** The Agent shall treat all printed matter, application blanks, and completed applications, as administered by the Company, and as property of the Insurer(s), subject at all times to the Company's control and discretion. The return and/or destruction of such materials shall be governed by Section 8.5 below.

2.8     **Errors and Omissions Insurance.** At all times during the Term of this Agreement, the Agent shall maintain Errors and Omissions insurance in an amount no less than $1,000,000 per claim. Upon request by the Company, the Agent shall furnish the Company and the Insurer(s) with proof of coverage in its favor, satisfactory to Company, for such amount as the Company deems necessary.

2.9     **Change of Address and Bank Information.** The Agent shall send the Company written notice ten (10) days in advance of any change in Agent's address or bank information. Upon failure of agent to notify Company of such address change, Company may discontinue sending commission checks and terminate this Agreement. Any commission not claimed within one (1) year of termination of the Agreement will be forfeited and become the property of the Company.



2.10 **Status of Agent.** Throughout this Agreement, the term "**Agent**" shall include any "**Licensed Broker**" of the Agent, as such term is defined under the laws of the state(s) or jurisdiction wherein the Agent solicits sales of any insurance plans. As a material inducement for the Company to enter into this Agreement, the Agent represents and warrants that:

    i.    The Agent does business as an independent contractor or agency employee at the address set forth below.

    ii.    The Agent is duly licensed as such, under the laws of the state where the address is located, under the laws of the state where the agent performs obligations under this Agreement. The Agent shall at all times maintain such license during the Term of this Agreement and shall provide copies of such license at the request of the Company.

    iii.    No license issued to the Agent by any government authority for the sale of any type insurance, prepaid health care, or hospital, or professional benefits agreement has ever been revoked or suspended.

    iv.    None of the Licensed Brokers of Agent have been convicted of any crime involving moral turpitude.

    v.    Agent agrees to notify Company immediately of any expiration, termination, suspension or other action by any Department of Insurance or any other governmental agency affecting license or appointment in any state which the Agent is contracting to do business pursuant to this Agreement.

2.11 **Nonexclusive.** The agency relationship established by this Agreement is nonexclusive and Company retains the right to designate other agents in the same territory as Agent. Agent shall solicit applications for policies only in those states where Agent is licensed and appointed by Company and only for those products which are approved by Company for sales in these states of solicitation. Agent hereby accepts the appointment and agrees to use its best efforts to solicit application for policies in accordance with this Agreement.

## SECTION 3: APPROVAL OF BUSINESS

3.1 **Discretion to Approve/Continue Coverage.** Insurer(s) have no obligation to accept any application for coverage received from the Agent or to continue any coverage already issued by Insurer(s), except in accordance with the policy terms, as applicable. All determinations with respect to any insurance coverage shall be made by Insurer(s) in its sole discretion.

## SECTION 4: COMMISSIONS

4.1 i. The Company negotiates unique offerings from a variety of insurance earners, and other providers, that constitute an exclusive Company offering. In exchange for the Agent's marketing of this package, enrolling Insurer(s) members, servicing the account, renewing the enrollment at least annually, and assisting member employers in complying with the rules and guidelines established by the Insurer(s), the Company



hereby agrees to provide compensation to the Agent as commissions under Attachment A, annexed hereto (the "**Commission Schedule**"). The Company shall have the right, at any time and from time to time in its discretion, to assign or delegate its obligation to make payments to the Agent to any affiliated entity including, but not limited to, the Insurer(s). In the event there is more than one Agent identified as the Split Agent (the "**Split Agent**") for a specific policy or contract, the Commission due from the Company or Insurer(s) to all Agents shall not exceed the total amount due as if there was one Agent.

ii.    Said compensation will be paid either through direct deposit or check sent by USPS to the Agent directly. Charge backs/revocation will be deducted from such commissions. Further, if an Agent is in good standing at the time of his or her death, the Company will continue to pay renewal commissions to said Agent's beneficiary as long as permitted by law. Unless otherwise designated in writing by completing Attachment B to this Agreement, your beneficiary shall be your estate. Notwithstanding the foregoing, the Company will only pay commissions to the Agent so long as the Insurer continues to pay commissions to the Company. At no time shall the Company owe any commissions to the Agent, if the Insurer has not remitted monies to the Company for the Agent.

iii.    At any time, the Company determines that it is necessary to change the rate of compensation for policies written under this Agreement, Company shall give Agent notice of such change. Any change in rate of first-year and renewal commissions (excluding additions or revisions to policies that result in payment of new or additional commissions) shall not affect policies issued on applications dated prior to the Effective Date of such notice.

iv.    In all cases where the Agent's claim to commissions is disputed for any reason, the Company shall have the right to decide and settle the dispute, and its decision shall be binding and conclusive.

v.    The Company may pursue the collection of charge backs/revocations beyond the termination of this Agreement and may use any means necessary including but not limited to a collection agency to collect any charge backs/revocations. The costs associated with the collection of such charge backs/revocations shall be added to said charge backs/revocations amounts.

**4.2    Eligibility for Commissions.** The parties agree that in order to be eligible for commissions under this Agreement the Agent must:
  i.    Maintain a valid insurance license in any state which the Agent is contracting to do business pursuant to this Agreement,
  ii.    Maintain a valid license in any situs state which may be required by the carrier the Agent is contracted to do business pursuant to this agreement.



iii.  Provide the Company annually with current copies of all required appointment certificates,

iv.  Maintain a policy for Errors and Omissions insurance in the amount requiredunder Section 2.8 under this Agreement,

v.  Notify the Company immediately of the loss of its state insurance license,

vi.  Notify the Company immediately of the loss of its Errors and Omissions insurance,

vii.  Remain as an active Agent for all insurance plans sold under this Agreement,

viii.  Remain active with the Company by submitting business at least once within any one year and maintain commissions of more than Fifty Dollars ($50) per commission payout,

ix.  Continued compliance with all provisions of this Agreement; and

x.  Excessive commission revocations subject to termination or commission schedule change.

**4.3**    **Individual and Group Sales Commission Addendum.** The Company will pay commissions and renewal fees only for insurance contracts whose application solicitation is authorized by this Agreement.    Unless governed by a separate commission agreement, all commission programs are subject to the terms of this Agreement.

**4.4**    **Re-Payment.** The Agent agrees to the prompt repayment to the Company for any compensation received for canceled policies, retroactive terminations, reduced premiums, or commissions paid in error; or commissions paid to the Agent on subscriptions that are waived, reduced, or returned. Alternatively, at the Company's option, such commissions may be debited from the Agent's account.

**4.5**    **Clerical Error.** In the event that the Company/Carrier, through inadvertent error, fails to pay commissions to the Agent, it is agreed that regarding any claim by the Agent for payment of such commissions, the Company shall be obligated to pay to Agent only those unpaid commissions due and payable to the Agent during the 12-month period (365 days) prior to the date on which the Company receives the first notice of claim. The Agent waives any right to earned but unpaid commissions due and payable for the Company to Agent over twelve (12) months (365 days) prior to the date on which the Company receives the first notice of the Agent's claim for payment. Notwithstanding the foregoing, the Agent shall not, under any circumstances (including, but not limited to, the Agent's good-faith belief that past-due commissions are owed and outstanding by the Company) be entitled to withhold any monies from the Company following collection thereof from membership applicants. Any such withholding by the Agent shall be deemed a breach of this Agreement and may, in the Company's discretion, be grounds for immediate termination of this Agreement.



## SECTION 5: ADVERTISING AND TRADEMARKS

**5.1** The Agent agrees not to use any name or trademark in any advertising or promotion of any kind without prior written approval of the Company and/or the Carrier. The Agent agrees not to use any service mark(s), name(s), or symbol(s), either presently existing or hereafter established without the expressed written permission of a duly authorized representative of the Company and will cease any and all such use immediately upon the earlier of termination of this Agreement or the withdrawal of the Company of such permission. No advertising promotional or informational materials prepared by the Agent under this Agreement shall be released or disseminated without the Company's prior written permission. Without limiting the generality of the foregoing, the Agent shall obtain the Company's prior written consent with respect to contents or text, of all brochures, cover letters, mailer envelopes, premium notices, inserts, and materials which accompany any mailings.

**5.2** The Agent may request to make mailing(s) to members of the Company, or to make mailings to prospects of the Agent through the Company. Approval will be at the discretion of the Company. The cost of developing, producing, and any postage will be the sole responsibility of the Agent. Agreed upon mailings will be delivered to the Company for mailing. The Agent will be responsible to reimburse the Company for all costs related to the mailing. Costs of the mailing will be communicated by the Company to the Agent prior to mailing.   Payment to the Company must be made prior to the Company executing the mailing.

**5.3** The Company shall have sole discretion in negotiating, selecting, contracting, and executing mailing with mail vendors.

## SECTION 6: MARKETING MATERIALS

6.1 The Company agrees to provide all materials needed to market and distribute Insurer(s) plans. The Agent agrees not to create or distribute any marketing material without prior written approval of the Company. Said materials include, but are not limited to, written, electronic, display, telemarketing, advertising, radio, television, and Internet protocols. The Agent agrees not to develop, or use, at any time, any logo(s) or name(s), without prior written approval of the Company. Any request for the development or use of marketing materials, or concepts, not provided by the Company, under this Agreement shall be submitted by the Agent to the Company for review and approval prior to use, production, or distribution.

## SECTION 7: TERM

7.1 The term (the **"Term"**) of this Agreement shall commence as of 12:01 A.M. on the first (1) day following the execution and delivery of this Agreement by both parties hereto.



## SECTION 8: TERMINATION

**8.1** The parties agree that this Agreement may be terminated by either party without cause by delivery of 30 days advance written notice to the other. Such notice shall be effective on the thirtieth (30th) day following the delivery date determined pursuant to Section 11 hereof.

**8.2** Upon termination, the Agent agrees to return all materials and cease all marketing of the Insurer(s) dental plans in accordance with Section 8.5 below. Payment of commissions on existing dental contracts shall survive termination of this Agreement, so long as the member employer designates the Agent as their representative and the Agent meets the conditions set forth in the Section 4.2 above and does not violate any other terms of this Agreement. It is the intent of the Company to make commission payments to the Agent so long as Company receives amounts sufficient to pay such commissions.

**8.3** This Agreement and all Attachments attached hereto shall automatically terminate in the event of the following event(s):

    i. the dissolution and/or liquidation of the Agent,

    ii. bankruptcy, insolvency, or cessation of the Agent,

    iii. failure to promptly provide any required data in a form acceptable to the Company,

    iv. failure of Agent to deliver products and/or services sold to members as contemplated and determined by the Company,

    v. failure of the Agent to maintain the required Errors and Omissions Coverage/bonding pursuant to Section 2.8 of this Agreement

    vi. The investigation of the Agent (or the indictment of any of the Agent's employees and/or Licensed Brokers) of criminal activity of any nature, negligence, fraud, or embezzlement,

    vii. Failure of the Agent to comply with applicable federal, state and/or local licensing requirements,

    viii. Misrepresentation on the part of the Agent, and/or the Agents employee(s) or Licensed Brokers, as deemed to occur in the Company's reasonable judgment,

    ix. Revocation, cancellation, or suspension of the Agent's license,

    x. Persistent charge backs/revocations determined by the Company to be excessive,

    xi. Career agent actively competes with the Company's products and or Clients.

**8.4** In the event of termination of this Agreement, the Agent shall complete the processing and delivery of all applications and services under the Agreement which were received



prior to the termination of this Agreement, but the Agent shall have no obligation to:

    i. Complete the processing and delivery of any such requests upon its determination that the eligible member has failed to provide funds for payment of billing due.

    ii. Process requests for orders presented to it after termination of the Agreement.

**8.5** All forms, marketing materials, applications, advertising materials, membership records, and any other information (collectively, the "**Materials**") designed and printed by the Company or utilized by the Agent in furtherance of its duties hereunder are deemed to be the property of the Company and shall be returned at the Agent's expense immediately following termination (or upon the delivery by the Company of a written demand to this effect). The Materials shall include, without limitation, Agent Reference Manuals, underwriting guidelines and procedures, applications, promotional materials, and other documents related to the Insurer(s) plans or as described under this Agreement. Upon the termination of this Agreement for any reason (or upon the delivery by the Company of a written demand to this effect), the Agent shall either (a) immediately destroy all of the Materials and provide the Company with a written certification as to the destruction of the Materials, or (b) return all of the Materials to the Company and provide the Company with a written certification stating that all of the Materials have been returned.

## SECTION 9: CONFIDENTIALITY; NON-SOLICITATION

**9.1** **Confidentiality.** Each of the Agent, its affiliates and subsidiaries, and  Licensed Brokers, employees, consultants and independent contractors in their respective individual capacities (collectively, the "**Agent Parties**"), recognize and acknowledge that the business and financial records, Trade Secrets, private processes, database, products, and confidential methods of operations of the Company and Insurer(s) as they may exist from time to time, and the identity of and information about members, potential members, referral sources, and vendors (collectively, the "**Confidential Information**"), are valuable, special, and unique assets of the Company and Insurer(s), access to, and knowledge of, which are essential to the performance of the duties of the Agent hereunder.  The Agent therefore agrees that none of the Agent Parties, during or at any time after the termination of this Agreement, disclose any of the Confidential Information to any person, firm, corporation, limited liability company, partnership, association, or other entity for any reason or purpose whatsoever, except in connection with the performance of their duties hereunder, nor shall they make use of the Confidential Information for their own purposes or for the benefit of any person, firm, corporation, limited liability company, partnership, or other entity except the Company. If any of the Agent Parties are required under a final judicial or governmental order to disclose any Confidential Information received from the Company and Insurer(s), then the Agent Parties may disclose the Confidential Information provided that the Agent gives the Company sufficient prior notice to contest such order.

9

DocuSign Envelope ID: 40EAF3BF-ADC9-4595-A4B1-99365716C655



**9.2**   **Non-Competition; Non-Solicitation.** During the term of this Agreement and for a period of three (3) years thereafter, the Agent agrees that none of the Agent Parties shall, directly or indirectly, employ or solicit the employment or engagement of any of the Company's employees or of any independent contractors or suppliers that service the Company, or interfere in any way with any such person's relationship with the Company. During the term of this Agreement, and for a period of three (3) years thereafter, the Agent further agrees that none of the Agent Parties shall, for itself/himself, or any other person, firm or corporation, canvas, solicit, or accept any business from any of the Insurer(s) members and/or potential members, or in any way interfere with any such person's relationship with the Company.

**9.3**   The existence of any claim or cause of action by the Agent against the Company shall not constitute a defense to the enforcement by the Company of the covenants contained in this Section 9, but such claim or cause of action shall be litigated separately.

**9.4**   The Agent acknowledges that the restrictions specified under this Section 9 are reasonable, in view of the nature of the business in which the Company is engaged, and the Agent's special and unique skills, reputation and knowledge of the Company's operations. The Agent further acknowledges that its/his services, if used by a competitor, could cause significant harm to the Company. Therefore, the Agent consents and agrees that if any of the Agent Parties violate, or threaten to violate, any of the provisions contained in this Section 9, the Company shall, in addition to such other remedies as it may have at law or in equity, be entitled to an injunction to be issued (without posting any bond or other undertaking) by a court or arbitrator of competent jurisdiction, restraining and prohibiting the Agent Parties, as applicable, from committing or continuing any violation of such provisions.

**9.5**   Notwithstanding anything contained in this Section 9 to the contrary, if the restrictions specified under this Section 9 should be determined to be unreasonable in any judicial proceeding, then the period of time, scope and area of the restriction shall be modified by a court so that this Agreement may be enforced to the maximum extent in such area, scope and during such period of time as shall be determined to be permitted by law.

**9.6**   The Agent's obligations with regard to the Confidential Information shall survive the termination or expiration of this Agreement for a period of three (3) years. The Agent's obligations with respect to any Confidential Information that is considered Trade Secrets of the Company shall survive until the later of (a) the date of termination of this Agreement, or (b) the date on which such Confidential Information no longer constitutes a Trade Secret of the Company, its successors, or assigns.


## SECTION 10: ASSIGNMENT

**10.1**   This Agreement will require that performance of personal services be provided by the Agent and shall not be assigned or delegated by the Agent without prior written consent



of the Company. The Company has the right to assign or delegate its obligations to any affiliated entity from time to time in its sole discretion.

## SECTION 11: NOTICES

11.1 Except as otherwise provided in this Agreement, any notices, requests, demands, and other communications, required or permitted to be given hereunder shall be in writing and shall be (a) personally delivered, (b) transmitted by postage pre-paid first class certified mail, (c) transmitted pre-paid by an overnight courier for priority next day delivery, or (d) transmitted by facsimile or email transmission (with the confirmation by certified mail as described below) and shall bear the address or facsimile number or email address (as applicable) as follows:

| | |
|---|---|
| **Company:** | **United Benefits, LLC** |
| | **C/O Matt Whitten** |
| | **3295 County Road 47** |
| | **Florence, AL  35630** |
| **Agent:**<br>**(Address)** | Anthony Caputo |
| | 106 Main St Ste D |
| | Matawan, NJ  07747 |

or to such other person or address as the parties shall furnish to the other in writing. All notices and other communications shall be deemed to have been duly given, received, and effective on (a) the date of receipt if delivered personally, (b) 3 business days after the date of posting, if transmitted by certified mail, (c) the business day after the date of transmission, if by overnight delivery, or (d) if transmitted by facsimile or email transmission, 2 business days following transmission if it is simultaneously sent by one other method of delivery.

## SECTION 12: COMPLAINTS AND LITIGATION

12.1 The Agent shall immediately notify the Company of any complaint to or from any state agency of which the Agent becomes aware in connection with any transaction covered by this Agreement. Any complaint letter pertaining to a product or service from any state agency received by the Agent together with its file and detailed report on the matter should be forwarded to the specific state agency and the Company.

12.2 Each party to this Agreement shall provide immediate notice, via email or facsimile, of receipt of any legal process wherein the other party is designated a defendant, or which, relates in any way to this Agreement. A copy of such legal process shall be faxed and/or emailed immediately or sent immediately by one-day express mail to the other party. Except to the extent a party is entitled to indemnification pursuant to this



Agreement, each party hereto shall be responsible at its own expense for defending itself in any litigation brought against it, whether or not the other party hereto is also a defendant, arising out of, or in connection with, the terms and conditions of this Agreement.

## SECTION 13: RIGHTS RESERVED TO THE COMPANY

13.1 **Reject Applications**. Reject any and all applications submitted by Agent, in a manner consistent with applicable state and federal law.

13.2 **Cancel or Discontinue Policy**. Cancel or non-renew any policy, consistent with applicable state and federal law.

13.3 **Recognition and Appointment**. Refuse to appoint any Agent or refuse to recognize an Agent of Record letter from anyone for any reason.

## SECTION 14: WAIVER

14.1 No waiver of any provision of this Agreement shall be deemed or shall constitute a waiver of any provision, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver. The failure of either party to insist upon strict compliance with any of the terms, covenants, or conditions, shall not be deemed a waiver of such terms, covenants and/or conditions.

## SECTION 15: REMEDIES

15.1 In the event suit or action is filed to enforce this Agreement or resolve any dispute relating to or arising under this Agreement, each party shall be responsible for their own costs and expenses incurred in connection with the suit or action, including without limitation, reasonable attorney fees determined at the time of the trial and/or on appeal. These expenses cannot be added to an award or remedy.

15.2 The parties agree that any legal action resulting from, arising under, out of or in connection with, directly or indirectly, this Agreement shall be commenced in the State of Alabama, County of Lauderdale. All parties to this Agreement hereby submit themselves to the jurisdiction of such court, and agree that service of process on them in any such action, suit or proceeding may be affected by the means by which notices are to be given under this Agreement.

## SECTION 16: ENTIRE AGREEMENT

**16.1** This Agreement, and any attachments, schedules and/or exhibits hereto, constitute the entire understanding between the parties pertaining to its subject matter, and supersedes all prior and contemporaneous agreements, representations, and understandings, either oral or written, of the parties. Each party to this Agreement acknowledges that no representations, inducements, promises, or agreements, oral or otherwise, have been made by any party, or by anyone acting on behalf of any party, which are not embodied

DocuSign Envelope ID: 40EAE3BE-ADC9-4595-A4B1-993A5716C655



herein. No supplement, modification, or amendment of this Agreement shall be binding unless executed in writing by all the parties hereto (except with respect to the Commission Schedule, which may be amended by the Company in its sole discretion).

## SECTION 17: CONFLICT OF TERMS

17.1.1   In the event of any conflict between the terms contained herein and the terms contained in any of the Attachments, or any other document delivered by either party to this Agreement to the other party, the terms and conditions of this Agreement shall prevail.

## SECTION 18: SECTION HEADINGS

18.1   The section headings used in this Agreement are solely for convenience of reference, are not part of this Agreement, and are not to be considered in construing or interpreting this Agreement.

## SECTION 19: SEVERABILITY

19.1   The invalidity of any one or more of the words, phrases, sentences, clauses, sections, or subsections contained in this Agreement shall not affect the enforceability of the remaining portions of this Agreement or any part hereof, all of which are inserted conditionally on their being valid in law, and, in the event that any one or more of the words, phrases, sentences, clauses, sections, or subsections contained in this Agreement shall be declared invalid by a court of competent jurisdiction, this Agreement shall be construed as if such invalid word or words, phrase or phrases, sentence or sentences, clause or clauses, section or sections, or subsection or subsections had not been inserted.

## SECTION 20: CONTROLLING LAW

20.1   This Agreement shall be governed by and construed in accordance with the laws of the State of Alabama, without regard to its principles of conflict or choice of law.

## SECTION 21: MISCELLANEOUS

21.1.1   Unless otherwise prohibited elsewhere in this Agreement, the provisions of this Agreement shall be binding upon and inure to the profit of the heirs, personal representatives, successors, and assigns of the Company.  However, the Agent's rights and duties are not assignable without express written consent of the Company.

21.1   The terms of this Agreement shall be construed according to its plain meaning and shall not be construed against either party by reason of their having drafted any or all of this document.

DocuSign Envelope ID: 40EAE3BF-ADC9-4B95-A461-9936E716C655



21.2    Each party agrees that this Agreement and any other documents to be delivered in connection herewith may be electronically signed, and that any electronic signature appearing on this Agreement or such other documents are the same as handwritten signatures for the purposes of validity, enforceability, and admissibility.

21.3    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

## SECTION 22: HIPAA

22.1    The parties agree to comply with applicable provisions of the Health Insurance Portability and Accountability Act of 1996 and its implementing regulations ("HIPAA").

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

United Benefits, LLC

[Agent]

By: _Matt Whitten_

By: Anthony Caputo

Name: Matt Whitten

Name: Anthony Caputo

Title:  Manager

Title: Agent

DocuSign Envelope ID: 40EAE3BE-ADC9-4595-A461-99365716C655



**Attachment A**
**Commission Schedule**

15

DocuSign Envelope ID: 40EAE3BE-ADC9-4595-A461-99365716C655



**Attachment B**
**Beneficiary Designation**

 BENEFICIARY DESIGNATION FORM

## AGENT INFORMATION

Name: Anthony Caputo _____    SSN: ███████ _____

Street Address: ████████ _____    City, State, Zip: ████████ _____

Home Phone: ████ _____    Business Phone: ████ _____

## BENEFICIARY(IES)  DESIGNATION

- **Primary**

Julia Caputo

Beneficiary Name: _____    SSN: ████ _____    DOB: ████ _____

Street Address: _____    City, State, Zip: _____

                                      Spouse

Home Phone: _____    Relationship: _____

- **Contingent**

Beneficiary Name: _____    SSN: _____    DOB: _____

Street Address: _____    City, State, Zip: _____

Home Phone: _____    Relationship: _____

Disclaimer:  The Contingent Beneficiary receives the assets if the Primary Beneficiary dies prior to you or disclaims.  Alternatively, if you do not designate a beneficiary or if the Primary Beneficiary and Contingent Beneficiary dies prior to you or disclaims, then under the Agent Agreement the default beneficiary is your estate.

*DocuSigned by:*

*Anthony Caputo*                                      03/02/2023
AABF8844687045F... _____    _____

Agent Signature                                      Date

# DocuSign®

| **Certificate Of Completion** | | |
|---|---|---|
| Envelope Id: 40FAE3BEADC94B95A4619926E716C055 | | Status: Completed |
| Subject: United Benefits Agent Agreement | | |
| Source Envelope: | | |
| Document Pages: 17 | Signatures: 2 | Envelope Originator: |
| Certificate Pages: 4 | Initials: 0 | Candace Miller |
| AutoNav: Enabled | | 3295 County Road 47 |
| EnvelopeId Stamping: Enabled | | Florence, AL  35630 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | candace@unitedbenefits.com |
| | | IP Address: 68.35.121.195 |

| **Record Tracking** | | |
|---|---|---|
| Status: Original | Holder: Candace Miller | Location: DocuSign |
| 2/20/2023 7:13:44 AM | candace@unitedbenefits.com | |

| **Signer Events** | **Signature** | **Timestamp** |
|---|---|---|
| Anthony Caputo | DocuSigned by: *Anthony Caputo* AABF8841997945F... | Sent: 2/20/2023 7:13:57 AM |
| anthony@unitedbenefits.com | | Resent: 2/27/2023 7:31:19 AM |
| Agent | | Viewed: 3/2/2023 8:11:44 AM |
| Security Level: Email, Account Authentication (None) | Signature Adoption: Pre-selected Style | Signed: 3/2/2023 8:14:24 AM |
| | Using IP Address: 74.102.51.119 | |

Electronic Record and Signature Disclosure:
  Accepted: 4/12/2021 7:12:05 AM
  ID: 462b595d-35a3-487a-b5f2-ac7c7b845e8c

| **In Person Signer Events** | **Signature** | **Timestamp** |
|---|---|---|

| **Editor Delivery Events** | **Status** | **Timestamp** |
|---|---|---|

| **Agent Delivery Events** | **Status** | **Timestamp** |
|---|---|---|

| **Intermediary Delivery Events** | **Status** | **Timestamp** |
|---|---|---|

| **Certified Delivery Events** | **Status** | **Timestamp** |
|---|---|---|

| **Carbon Copy Events** | **Status** | **Timestamp** |
|---|---|---|

| **Witness Events** | **Signature** | **Timestamp** |
|---|---|---|

| **Notary Events** | **Signature** | **Timestamp** |
|---|---|---|

| **Envelope Summary Events** | **Status** | **Timestamps** |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 2/20/2023 7:13:58 AM |
| Certified Delivered | Security Checked | 3/2/2023 8:11:44 AM |
| Signing Complete | Security Checked | 3/2/2023 8:14:24 AM |
| Completed | Security Checked | 3/2/2023 8:14:24 AM |

| **Payment Events** | **Status** | **Timestamps** |
|---|---|---|

| **Electronic Record and Signature Disclosure** | | |
|---|---|---|

**ELECTRONIC RECORD AND SIGNATURE DISCLOSURE**

From time to time, United Benefits (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact United Benefits:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: candace@unitedbenefits.com

**To advise United Benefits of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at candace@unitedbenefits.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from United Benefits**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to candace@unitedbenefits.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with United Benefits**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to candace@unitedbenefits.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

## Required hardware and software

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

## Acknowledging your access and consent to receive and sign documents electronically

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify United Benefits as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by United Benefits during the course of your relationship with United Benefits.